UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>D-2 WILLIAM DOUGLAS, and<br>D-3 ROBERT SMITH, II,<br><br>    Defendants. | Case No. 24-20196<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING MOTION TO DISMISS
PURSUANT TO *BRUEN* [96]**

Robert Smith, II has several prior felony convictions. Thus, the felon in possession statute, 18 U.S.C. § 922(g)(1), prohibits his possession of a firearm—including the Glock .45 caliber pistol he is currently accused of possessing on March 7, 2024. Smith believes the statute violates the Second Amendment as applied to him and seeks dismissal of the felon in possession charge. Because Smith has not satisfied his burden of demonstrating that he is not dangerous, he may lawfully be disarmed and, thus, his motion is DENIED.

**I.**

The superseding indictment alleges simply that on or about March 7, 2024, Smith knowingly possessed a Glock, model 30, .45 caliber pistol, equipped with a machine gun conversion device. (ECF No. 29, PageID.164.) As fleshed out in the government's response brief, Smith was in a Detroit restaurant huffing nitrous oxide and holding the firearm. (ECF No. 110, PageID.633; *see* ECF No. 110-3.) Several

customers called 911, and when the police arrived Smith fled. (ECF No. 110, PageID.633.) During the ensuing chase, Smith tossed the firearm, and officers retrieved it. (*Id.*) Forensic analysis connected it to a drive-by shooting that happened four days earlier, in which 19 shots were fired at a man outside a home in Detroit. (*Id.*; ECF No. 110-2.) The day of that shooting, Smith had posted a video on Instagram, apparently saying, "On tether, dropped a body on Sunday, I can merch!"[1] (ECF No. 110, PageID.632–633 (citing ECF No. 110-6, Video Ex. 9, Instagram Video).) And in fact, in early March 2024, Smith had a tether requirement as part of his probation, following a state conviction for larceny from a motor vehicle. (*Id.* at PageID.634; ECF No. 110-5.)

For possessing the Glock equipped with a machine gun conversion device, Smith is presently charged in a multi-defendant, multi-count superseding indictment with being a felon in possession of a firearm and illegally possessing a machine gun. (ECF No. 29.) Smith now moves to dismiss the former count on the ground that he is not dangerous and thus the felon in possession statute is unconstitutional as applied to him pursuant to the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and as applied by the Sixth Circuit in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). (ECF No. 96.) The government opposes the motion. (ECF No. 110.) It relies on the facts underlying Smith's prior convictions,

---

[1] "Merch" appears to be "Chicago slang meaning . . . to be able to provide factual evidence that something is what you're claiming it to be." *Merch*, Urb. Dictionary, https://perma.cc/ZY53-TF9H; *see also merch it*, Urb. Dictionary, https://perma.cc/NSH9-Z6MQ ("A South Chicago term used to put your word on something."). "Merch" can also be short for merchandise.

current charges, and violations of court supervision to argue that Smith is a dangerous felon who can lawfully be precluded from possessing a firearm. (*Id.*) The motion can be decided on the briefs. *See* E.D. Mich. LR 7.1(f)(2).

## II.

In applying the *Bruen* framework for assessing the constitutionality of a firearm regulation, the Sixth Circuit recently concluded that § 922(g)(1) "is constitutional on its face and as applied to dangerous people" because our Nation's "history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous." *United States v. Williams*, 113 F.4th 637, 662–63 (6th Cir. 2024). *Williams* elaborated that a defendant who wishes to raise an as-applied challenge to § 922(g)(1) must make "an individualized showing that he himself is not actually dangerous," considering his individual characteristics and "entire criminal record." *Id.* at 663. Smith has failed to do so.

Start with Smith's criminal history. Smith's motion and pretrial services report identify his numerous prior state felony convictions. (ECF No. 96, PageID.511–512; Sept. 12, 2024, Pretrial Services Report.) For virtually all, Smith was sentenced to probation, which he repeatedly violated. (ECF No. 110, PageID.633–634; Sept. 12, 2024, Presentence Report.)

Smith was first arrested on April 16, 2022, and ultimately convicted of receiving and concealing stolen property as well as fleeing and assaulting/resisting/obstructing police officers. (*Id.*) The details of this offense have not been provided.

A few months later, on June 16, 2022, Smith stole a car from a Ford assembly plant. (ECF No. 117-1 (sealed) (Michigan Department of Corrections Presentence Investigation Report).) Smith fled officers at speeds over 150 mph while driving in and out of lanes of traffic. (*Id.*) He was ultimately apprehended after driving the car up a grassy embankment where it became disabled. (*Id.*) He was wearing a ski mask and gloves. (*Id.*) Smith was convicted of receiving and concealing stolen property, $20K or more; unlawful driving away; and fleeing from a police officer. (Sept. 12, 2024, Pretrial Services Report.)

Six months later, in late January 2023, Smith was involved with stealing a Range Rover in Bloomfield Hills and then driving it around while breaking into and stealing personal property from residents' cars. (ECF Nos. 117-2, 117-3 (sealed) (Michigan Department of Corrections Presentence Investigation Reports).) This conduct occurred over multiple days and in a few different neighborhoods, resulting in several convictions, including stealing credit cards from vehicles; larceny less than $20K and receiving and concealing stolen property; and two counts of larceny from a motor vehicle. (*Id.*; Sept. 12, 2024, Presentence Report.)

A few months after that, on April 22, 2023, Smith was an occupant in a stolen GMC Acadia. (ECF No. 117-4 (sealed) (Michigan Department of Corrections Presentence Investigation Report).) After the car was disabled, Smith (and the others) fled. (*Id.*) Police found a BB gun, stolen goods, and a mask in the vehicle. (*Id.*) Smith was convicted of assaulting/resisting/obstructing a police officer. (*Id.*)

4

According to the Sixth Circuit, "[a] person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being' . . . or (2) a crime that inherently poses a significant threat of danger." *Williams*, 113 F.4th at 663. Indeed, "[a]n individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous." *Id.*; *see id.* (contrasting "[a] more difficult category" of "crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements").

Fleeing police at an incredibly high rate of speed while weaving in and out of traffic lanes is an offense that poses a significant threat of public danger. *See, e.g.*, *United States v. Green*, No. 23-20506, 2024 U.S. Dist. LEXIS 185509, at *7 (E.D. Mich. Oct. 10, 2024) ("[The defendant's] conviction for fleeing and eluding involved danger to others; his reckless driving while fleeing the police put members of the public at risk of injury or worse."); *United States v. Hales*, No. 23-20645, 2024 U.S. Dist. LEXIS 229835, at *14 (E.D. Mich. Dec. 19, 2024) ("[O]ne of Hales' convictions—felony fleeing and eluding in the third degree—is a crime in *Williams*' first category which were directly dangerous to others."); *United States v. Sykes*, No. 19-00060, 2025 U.S. Dist. LEXIS 6618, at *9–10 (M.D. Tenn. Jan. 8, 2025) ("[T]he Pretrial Services Report in this case reflects misdemeanor convictions in 2000 and then again in 2002 for resisting arrest, as well as a 2009 conviction for evading arrest. These convictions also suggest dangerousness."); *accord United States v. Jimenez*, 323 F.3d 320, 324 (5th Cir. 2003) (recognizing that "leading police officers on a high-speed chase . . . by

5

itself created a substantial risk of serious injury" that warranted a guidelines adjustment for reckless endangerment during flight (omission in original)).

There are also other indicia of dangerousness. First, Smith's prior convictions for the same pattern of dangerous conduct—stealing cars, stealing from cars, and fleeing from police—"evince a likelihood of future dangerous conduct." *See United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024). As the government points out, "[e]ach time [Smith] stole cars and personal property from victims in the community he created the possibility of violent confrontations that put the property owners' safety at risk." (ECF No. 110, PageID.637.) Second, Smith was on state probation and expressly prohibited from possessing firearms (ECF No. 110-5) at the time he allegedly possessed the firearm in this case. *See Goins*, 118 F.4th at 801–02 ("[O]ur nation's historical tradition of forfeiture laws . . . also supports disarming those on parole, probation, or supervised release."); *see also United States v. Taylor*, No. 23-5644, 2024 WL 4891756, at *2 (6th Cir. Nov. 25, 2024) ("Like the defendant in *Goins*, Taylor was also on probation when he possessed firearms in violation of § 922(g)(1). So like Goins, Taylor's Second Amendment as-applied challenge to his § 922(g)(1) conviction fails."). Third, Smith appears to be connected to a drive-by shooting on March 3, 2024, in which 19 shots were fired on a random individual. Smith posted on Instagram that day talking about "dropping a body." And the gun he allegedly possessed on March 7, 2024, is tied to that shooting. *See United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) (recognizing that in

6

determining the defendant's dangerousness, the court can consider the underlying offense conduct as well as defendant's previous convictions).

Smith presents no countervailing evidence to demonstrate to the Court that he is not dangerous. His only retort is his age at the time of the offenses. (ECF No. 96, PageID.512.) He says his criminal record "reflects foolish and larcenous behavior as opposed to assaultive and depraved conduct." (*Id.* at PageID.513.) But the fact that he is only 21 and committed most of his prior offenses from ages 17–20 does not, on its own, translate to a lack of dangerousness. *See, e.g.*, *United States v. Brown*, No. 24-20227, 2024 U.S. Dist. LEXIS 228880, at *18 (E.D. Mich. Dec. 18, 2024). If anything, Smith's ascent into greater maturity seems to be coinciding with an escalation in dangerousness.

Because Smith "availed himself of his constitutionally required opportunity to show that he is not dangerous," and "[b]ecause his record demonstrates that he is dangerous," the Court rejects his challenge to his § 922(g)(1) conviction. *See United States v. McNeal*, No. 24-5026, 2024 U.S. App. LEXIS 28316, at *3 (6th Cir. Nov. 6, 2024) (quoting *Williams*, 113 F.4th at 663).

### III.

Lastly, the Court notes that on February 7, 2025, defendant William Douglas filed a notice of joinder in this motion. (ECF No. 101.) Douglas' joinder merely "requests that he be allowed to participate in any hearings conducted in connection with [Smith's] motion and that he be permitted to submit supplemental briefs if deemed necessary." (*Id.*) There is no discussion of Douglas' individual circumstances.

7

This is fatal. Remember, the inquiry under *Williams* is inherently "individualized," allowing a defendant the opportunity to present evidence to the Court showing "that he himself is not actually dangerous." 113 F.4th at 663. Indeed, the defendant has the "burden to demonstrate that he is not dangerous." *Id*. Douglas has made no attempt to do so. Nor could he, for all the reasons set forth in the government's response brief detailing Douglas' extensive criminal history involving firearms, fleeing from police, and violations of court supervision. (ECF No. 111.) So the Court will deny Douglas' request as well.

## IV.

For these reasons, Smith's motion to dismiss the superseding indictment (ECF No. 96) and Douglas' joinder (ECF No. 101) are DENIED.

SO ORDERED.

Dated: March 14, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
