UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.

D-2 WILLIAM DOUGLAS, and
D-4 HAVIER JACKSON,

    Defendants.

Case No. 24-20196
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS PURSUANT TO *BRUEN* AND *CARGILL* [81, 82]**

In March of 2024, Havier Jackson was seen in pictures holding a Glock pistol equipped with a machinegun conversion device. Soon after, he was charged with one count of illegal possession of a machinegun under 18 U.S.C. § 922(o). Jackson contends the firearm he possessed does not qualify as a machinegun under the statute and, even if it did, the statute violates the Second Amendment. The Court disagrees. Accordingly, Jackson's motions to dismiss are DENIED.[1]

**I.**

The superseding indictment alleges that from March 3 to March 7, 2024, Jackson knowingly possessed a machinegun, "that is[,] a Glock model 30, .45 caliber pistol, equipped with a machine gun conversion device" in violation of 18 U.S.C.

---

[1] Defendant William Douglas filed notices of joinder/concurrence in Jackson's motions to dismiss (ECF Nos. 102, 103).

§ 922(o), under which it is "unlawful for any person to transfer or possess a machinegun." (ECF No. 29, PageID.164–165.)

As fleshed out in the government's response brief, on March 3, 2024, Jackson and three of his friends were allegedly "driving around with guns and inhaling nitrous oxide." (ECF No. 85, PageID.370.) As seen in Instagram videos posted by one of the car's occupants, Jackson had a Glock .45 caliber pistol equipped with a machinegun conversion device colloquially referred to as a "Glock switch." (*Id.*; ECF No. 85-3.) The same night, there was a non-fatal shooting. (ECF No. 85, PageID.370.) Cellphone data and ballistics established that Jackson was present at the scene of the shooting. (*Id.* at PageID.370–371.) Later, in an interview with police, Jackson admitted to possessing the gun, but denied shooting the victim. (*Id.* at PageID.371.)

Another Instagram video posted on March 4, 2024, shows Jackson with the firearm equipped with the Glock switch. (ECF No. 85-4.) And on March 6, 2024, Jackson participated in an Instagram Live broadcast where he again can be seen brandishing the firearm equipped with the switch. (ECF No. 85-5.) During the broadcast, Jackson stated, "Call our ass the button boys!" (ECF No. 85, PageID.372.) Machinegun conversion devices like Glock switches are often referred to as "buttons." (*Id.*)

For this conduct, Jackson is charged in a multi-defendant, multi-count superseding indictment with illegal possession of a machinegun under 18 U.S.C. § 922(o). (ECF No. 29, PageID.164–165.) Jackson has filed two motions to dismiss the indictment. In his first motion, he argues that § 922(o) is unconstitutional under the

2

Second Amendment following the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (ECF No. 82.) In his second motion, he asserts that the firearm he possessed is not a machinegun under § 922(o) according to the Supreme Court's decision in *Garland v. Cargill*, 502 U.S. 406 (2024). (ECF No. 81.) The government opposes the motions. (ECF Nos. 85, 86.) These motions can be decided on the briefs. *See* E.D. Mich. LR 7.1(f)(2).

## II.

Start with Jackson's argument that 18 U.S.C. § 922(o)—which makes it "unlawful for any person to transfer or possess a machinegun"—is unconstitutional. (ECF No. 82.) The Court finds that Jackson's argument is foreclosed by Sixth Circuit precedent. To explain why, a bit of background is needed.

### A. From *Heller* to *Bruen*

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court found that the Second Amendment "confer[s] an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). Specifically, the *Heller* Court held that citizens must be allowed "to use [handguns] for the core lawful purpose of self-defense," *id.* at 630, and that "above all other interests" the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id.* at 652. But *Heller* also warned that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. Indeed, the Second Amendment

3

does not enshrine the right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*

Aside from these limited guideposts, *Heller* did not expound any sort of framework under which to evaluate gun regulations. Eventually, however, courts across the country interpreted *Heller* and coalesced around a two-step test. *See, e.g., United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (collecting cases). At step one, courts determined if the Second Amendment applies—that is, "whether the challenged law burdens conduct that falls within the scope of the Second Amendment, as historically understood." *Id.* at 518. If so, then courts proceeded to the second step—"appl[ying] the appropriate level of scrutiny" to assess "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.*

Then came *Bruen*. There, the Supreme Court purported to "ma[k]e the constitutional standard endorsed in *Heller* more explicit." *Bruen*, 597 U.S. at 31. It found that "[d]espite the popularity" of the approach lower courts had crafted, *Heller* "do[es] not support applying means-ends scrutiny in the Second Amendment context." *Id.* at 19. So, in hopes of clarifying the field, *Bruen* articulated a new two-step test. "In keeping with *Heller*," *Bruen*'s first step mirrors *Heller*'s: a court must determine if the Second Amendment "covers [the regulated] conduct." *Id.* at 17.

But where *Bruen* and lower courts' interpretation of *Heller* diverge is at the second step. Indeed, no longer can the government "simply posit that the [firearm] regulation promotes an important interest" and survive under scrutiny. *Id.* Rather,

4

under *Bruen*'s second step, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* In doing so, the government need not proffer a "historical twin" to justify a modern regulation. *Id.* at 30 (emphasis omitted). Instead, the relevant inquiry is whether the modern regulation "is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

## B. Sixth Circuit Precedent

Now for the specific question of machinegun regulations. In *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009), the Sixth Circuit found that § 922(o) was constitutional. Relying on *Heller*, the court reiterated that the Second Amendment's protections do not extend to "those weapons not typically possessed by law-abiding citizens for lawful purposes" and that "whatever the individual right to keep and bear arms might entail, it does not authorize an unlicensed individual to possess unregistered machine guns for personal use." *Id.*

That is where *Hamblen*'s analysis stopped. Because it found that the act of possessing a machinegun was conduct not protected by the Second Amendment, it did not proceed to *Heller*'s now-rejected second step—means-ends scrutiny.[2] In this

---

[2] As an aside, the Court notes that *Hamblen* stands in good company—many other circuit courts across the country reasoned similarly. *See United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) ("Regardless of [plaintiff's] membership in the unorganized militia of the State of Connecticut, the Second Amendment does not protect [his] personal possession of machine guns."); *United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010) ("[T]he the Supreme Court has made clear the Second Amendment does not protect [machineguns]."); *Hollis v. Lynch*, 827 F.3d 436, 449–51 (5th Cir. 2016) ("Machineguns are dangerous and unusual and therefore not in common use."); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015)

5

way, its analysis is entirely consistent with *Bruen's* new framework—i.e., the court determined at the outset that the Second Amendment does not "cover . . . [the] conduct" at issue (possessing a machinegun). 597 U.S. at 26. So there would be no need to evaluate whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Accordingly, courts in this Circuit repeatedly have explained that, even in the wake of *Bruen*, *Hamblen* remains binding precedent. *See, e.g., United States v. Mitchell*, 734 F. Supp. 3d 702, 706 (N.D. Ohio May 20, 2024) ("[N]othing in *Bruen* can be reasonably understood to have overturned or disturbed the holding or the underlying reasoning in *Hamblen*."); *United States v. Caldwell*, No. 24-70, 2024 U.S. Dist. LEXIS 95726, at *13 (N.D. Ohio May 30, 2024) ("*Bruen* does not, in any way, cast doubt on the Sixth Circuit's pronouncement."); *United States v. Wilson*, No. 23-20081, 2023 U.S. Dist. LEXIS 213707, at *11 (W.D. Tenn. Nov. 7, 2023) ("Remember, *Bruen* dealt with the *conduct* protected by the Second Amendment. It said nothing about the *types of weapons* one can possess. So the holding in *Hamblen* remains the law of the Sixth Circuit."); *United States v. Sturgeon*, No. 23-6, 2023 U.S. Dist. LEXIS 188936, at *7–9 (E.D. Ky. Oct. 20, 2023) ("Following *Heller*, the Sixth Circuit explicitly stated that the Second Amendment does not authorize the unlicensed

---

("*Heller* deemed a ban on private possession of machine guns to be obviously valid."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment.").

possession of an unregistered machine gun for personal use. Nothing in *Bruen* can be reasonably read to call this holding into question." (citation omitted)); *United States v. Smith*, No. 23-28, 2023 U.S. Dist. LEXIS 187030, at *6 (E.D. Ky. Oct. 18, 2023) ("Nothing in *Bruen* disturbs [*Hamblen*'s] holding, as *Bruen* strictly limited its application to conduct protected by the Second Amendment.").

*Hamblen* is dispositive, and Jackson offers no contrary authority.

### C. Application of *Bruen*

Although the Court believes that *Hamblen* remains binding post-*Bruen* and decides this case, it recognizes that some courts have applied *Bruen* to assess anew the constitutionality of § 922(o). To that end, this Court agrees with the vast majority of federal courts across the country who have dealt with this issue and found that § 922(o) is constitutional under the *Bruen* framework. *See, e.g.*, *United States v. Simien*, 655 F. Supp. 3d 540, 554 (W.D. Tex. 2023) ("[M]achineguns . . . do not receive Second Amendment protection and [the defendant's] facial challenge to § 922(o), therefore, fails."); *United States v. Hernandez*, 721 F.Supp.3d 310, 315 (D. Del. 2024) ("[T]he machine gun ban of § 922(o) is facially constitutional under *Bruen*."); *United States v. Lane*, 689 F.Supp.3d 232, 252 (E.D. Va. 2023) (concluding that "§ 922(o) is constitutional" under *Bruen*); *United States v. Alsenat*, 734 F. Supp. 3d 1295, 1305 (S.D. Fla. 2024) (concluding that "machineguns . . . are not afforded Second Amendment protection" under *Bruen*); *United States v. Schwartz*, No. 22-140, 2024 U.S. Dist. LEXIS 115235, at *3–6 & n.2 (E.D. La. July 1, 2024) ("Section 922(o) does

7

not violate the Second Amendment" under *Bruen*, and "every attack [raising this argument] has so far been rejected.") (collecting cases).

Indeed, as far as the Court can tell, only one federal court has ruled otherwise. *See United States v. Morgan*, No. 23-10047, 2024 U.S. Dist. LEXIS 152562 (D. Kan. Aug. 26, 2024). This Court, however, believes that *Morgan* is in conflict with substantial authority and can reasonably be considered an outlier. *See United States v. Johnson*, No. 24-20083, 2024 U.S. Dist. LEXIS 196460, at *36–42 (E.D. Mich. Oct. 29, 2024) (explaining how *Morgan* "employs a logical construct which is, respectfully, flawed," treats key Supreme Court precedent as dictum, and errs by "disregarding too quickly the historical analogs offered by the government in support of the statute").

And irrespective of any district court conflict, there is a case pending before the Sixth Circuit in which this question—whether § 922(o) is constitutional—is squarely presented. *See United States v. Greely*, No. 23-1978 (6th Cir. Nov. 2, 2023), ECF No. 1. Oral argument in that case is set for May 8, 2025. *Greely*, No. 23-1978, ECF No. 36. Given Jackson's trial schedule (*see* ECF No. 118), the Court feels it necessary to rule on Jackson's motion now, rather than wait for a decision in *Greely*. But, of course, if the Sixth Circuit (or Supreme Court) rules that § 922(o) is unconstitutional under *Bruen*, this Court will reconsider its contrary ruling at the appropriate time.

8

### III.

Next, Jackson argues that the indictment should be dismissed because the firearm he possessed—that is, a Glock model 30, .45 caliber pistol, equipped with a machinegun conversion device (ECF No. 29, PageID.164–165)—is not a machinegun under 18 U.S.C. § 922(o). More specifically, he argues that "by the same logic as set forth [in] *Garland v. Cargill* [602 U.S. 406 (2024)], the Glock switch here is no more a machinegun than the bump stocks there. Both attachments require some additional function beyond the initial pull of the trigger." (ECF No. 81, PageID.339.)

As discussed, § 922(o) makes it "unlawful for any person to transfer or possess a machinegun." The statute borrows the definition of a machinegun from the National Firearms Act which defines a machinegun as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). So the ability to automatically fire multiple shots "by a single function of the trigger" is key.

The Supreme Court recently shed light on this statutory language in *Garland v. Cargill*, 602 U.S. 406 (2024). It held that bump stocks, when attached to a semiautomatic weapon, did not fall within the definition of "machinegun" under § 5845(b). *Id*. at 410. The Court reasoned that a semiautomatic rifle equipped with a bump stock "does not fire more than one shot 'by a single function of the trigger'"—

9

i.e., a single pull or analogous motion—because "with or without a bump stock, a shooter must release and reset the trigger between every shot." *Id.* at 415. "And any subsequent shot fired after the trigger has been released and reset is the result of a separate and distinct 'function of the trigger.'" *Id.* (quoting 26 U.S.C. § 5854(b)). Likewise, it reasoned that even if a rifle equipped with a bump stock "could fire more than one shot by a single function of the trigger, it could not do so automatically" because, for a bump stock to work, a shooter must "actively maintain just the right amount of forward pressure on the rifle's front grip with his nontrigger hand." *Id.* at 424.

So in a post-*Cargill* world, the question for this Court is whether a firearm equipped with a Glock switch or similar machine gun conversion device automatically fires more than one shot via a single pull of the trigger or analogous motion. Jackson says it does not. The crux of his argument is that a Glock switch is not a machinegun because, to fire multiple shots, the shooter cannot simply pull the trigger but must keep his finger pressed on it. (ECF No. 81, PageID.342–345.) This, contends Jackson, is not a "single function" of the trigger. As will be explained, this is not an apt analogy to *Cargill*.

Jackson first explains that a "standard handgun comes equipped with a trigger bar, a reciprocating slide, and a longitudinal firing mechanism." (*Id.* at PageID.344.) And generally, one pull of the trigger fires one shot. That is because the trigger bar "engages the firing mechanism and prevents forward motion of the firing mechanism" following one pull of the trigger. (*Id.*)

10

But things work differently when a Glock switch is installed. A Glock switch has a "member or small piece of metal" that "urges the trigger bar away from its first position following trigger activation"—preventing the trigger from reengaging and allowing for one pull of the trigger to fire several shots. (*Id*.) In other words, the device "override[s] the basic mechanical process of a firearm so that the trigger functions only once in a string of automatic fire." (ECF No. 85, PageID.380.) But, for a Glock switch to work, says Jackson, "[t]he trigger must be held with just the right amount of pressure. Without the right amount of pressure, the trigger reset would reengage[] thus rendering the firearm simply a semiautomatic firearm, regardless of the Glock switch." (ECF No. 81, PageID.343–344.) So, argues Jackson, a Glock switch is like the bump stock in *Cargill* because its functionality "requires engaging the trigger one time—*and then some*." (*Id.* (quoting *Cargill*, 602 U.S. at 424).)

There are several flaws in Jackson's argument. Start with the most obvious one: *all* machineguns require the shooter to hold down the trigger to continue firing bullets. Thus, under Jackson's interpretation of the statute, *no* gun would qualify as a machinegun. *See United States v. Johnson*, No. 24-20429, 2024 U.S. Dist. LEXIS 204388, at *22 (E.D. Mich. Nov. 8, 2024) ("If the defendant's argument were accepted, it is difficult to see how any machinegun would meet the statute's definition, since holding a trigger in a depressed position is a necessary condition for a machinegun to fire multiple rounds."). As the government explains, while Jackson "puts a lot of emphasis on needing to apply 'just the right amount of pressure' on the trigger . . . [in]

11

reality, all a shooter must do is pull the trigger and hold it." (ECF No. 85, PageID.378.) So Jackson's reading would practically negate the statute.

Nothing in *Cargill* or in any binding authority necessitates such a faulty reading. Indeed, the bump stocks at issue in *Cargill* are fundamentally quite different from Glock switches. "Bump stocks are accessories for semiautomatic rifles that allow the rifle to slide back and forth, facilitating 'bump firing,' a technique that uses the recoil from one shot to engage the user's stationary finger repeatedly to depress the trigger, thereby increasing the firing rate." *Johnson*, 2024 U.S. Dist. LEXIS 204388, at *19–20 (citing *Cargill*, 602 U.S. at 411–12). To reiterate, in *Cargill*, the Supreme Court explained that a bump stock was not a machinegun in part because even if a rifle equipped with a bump stock "could fire more than one shot by a single function of the trigger, it could not do so automatically"—indeed, a "shooter must also actively maintain just the right amount of forward pressure on the rifles front grip with his nontrigger hand." 602 U.S. at 424. (cleaned up). Thus, the "extra effort discussed in *Cargill* consisted of the 'forward pressure on the rifle's front grip,' not the effort of pulling the trigger itself, which is inherent in the use of any firearm." *Johnson*, 2024 U.S. Dist. LEXIS 204388, at *20–21. By contrast, when utilizing a firearm equipped with a Glock switch, all a shooter must do to fire multiple rounds of ammunition in rapid succession is hold down the trigger—which is "a single function." So, unlike the bump stocks in *Cargill*, a Glock equipped with a switch is a machinegun because it can fire multiple rounds of ammunition via the single function of the trigger.

Jackson's position is also directly contradicted by *Cargill* itself. More specifically, the Supreme Court explicitly distinguished bump stocks from auto sears, and a Glock switch is a type of auto sear. *See, e.g.*, *United States v. Moore*, No. 24-0097, 2025 U.S. Dist. LEXIS 63942, at *2 n.1 (S.D. Miss. Apr. 3, 2025) ("Auto sears designed for Glock handguns are colloquially called 'Glock switches' or 'buttons.'"). It explained that an auto sear—a device used to enhance firearms—"permits a shooter to fire multiple shots while engaging the trigger only once." *Cargill*, 602 U.S. at 420 n.4. By the Supreme Court's own definition, then, an auto sear—unlike a bump stock—is a machinegun. This all but forecloses Jackson's argument.

This Court is not alone in holding that a Glock switch is a machinegun under § 922(o). Indeed, several courts in this District and around the country have reached the same conclusion. *See Johnson*, 2024 U.S. Dist. LEXIS 204388, at *17–26 (finding that a Glock switch is a machinegun and mechanically distinguishable from a bump stock); *United States v. Farmer*, No. 22-20678, 2024 U.S. Dist. LEXIS 170572, at *8–11 (E.D. Mich. Sept. 20, 2024) ("Glock conversion devices, which are designed and intended to turn firearms into machineguns, are also machineguns under the statutory definition."); *United States v. Williams*, 2025 U.S. Dist. LEXIS 68301, at *17 (D. Md. Apr. 9, 2025) ("Glock-type conversion devices . . . meet the definition of a 'machinegun' as set forth in [the National Firearms Act]."); *United States v. Smith*, No. 22-3051, 2024 U.S. Dist. LEXIS 212733, at *2 n.1 (D. Neb. Nov. 22, 2024) ("The 'machinegun' the defendant possessed here was a Glock model 20 modified with an

13

aftermarket 'switch' that enabled the gun to fire fully automatic. Such a switch falls outside the reasoning of *Cargill*." (citation omitted)).

And that is not to mention the slew of pre-*Cargill* cases holding that similar machinegun conversion devices are "machineguns" under § 922(o). While *Cargill* undoubtedly impacts how courts must now read the statute, these pre-*Cargill* cases support the basic proposition that machinegun conversion devices, like Glock switches, convert semiautomatic firearms into ones that are fully automatic, firing multiple rounds with the single pull of a trigger. *United States v. Cooperman*, No. 22-146, 2023 U.S. Dist. LEXIS 129007, at *5–7 (N.D. Ill. July 26, 2023) ("Glock switches, also known as Glock conversion devices or auto sears, are considered machineguns under federal statute because they are parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." (internal quotations omitted)); *United States v. Dodson*, 519 F. App'x 344, 349 (6th Cir. 2013) ("[T]he 1986 amendments expanded the definition of machinegun, which by including 'any' part—not just a combination of parts—more clearly brought auto sears within the scope of the definition."); *Roe v. Dettelbach*, 59 F.4th 255, 257 (7th Cir. 2023) ("Drop-in auto sears can be installed into semi-automatic guns; once in place, they make the weapon fully automatic, meaning the user must pull the trigger only once to fire repeated shots."); *United States v. Gravel*, 645 F.3d 549, 552 (2d Cir. 2011) ("The Vermont State Police removed the auto sear, disabling the weapon's automatic firing function. The evidence indicated that simply replacing the auto sear would reenable the gun's

14

automatic fire capabilities."); *United States v. Fisher*, No. 23-00045, 2024 U.S. Dist. LEXIS 25221, at *5–7 (W.D.N.C. Feb. 13, 2024) ("[T]his Court will simply analyze whether Glock Switches are unusually dangerous, and easily finds that they are. A Glock Switch converts a common handgun into a machine gun, thus making it much more dangerous than just a handgun."); *see also United States v. Cousar*, No. 23-10004, 2024 U.S. Dist. LEXIS 60393, at *28–31 (D. Kan. Apr. 2, 2024) ("[T]he only question this Court must answer is whether the 'right to keep and bear Arms' covers possessing a machinegun such as a Glock switch.").

This considerable authority, combined with the differences between a bump stock and Glock switch, confirms that a firearm like the one Jackson allegedly possessed, i.e., a Glock equipped with a Glock switch, is a machinegun under § 922(o).

## IV.

For the reasons above, the Court DENIES Jackson's motions to dismiss (ECF No. 81, 82).

SO ORDERED.

Dated: April 23, 2025

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE